Judge GIERKE
delivered the opinion of the Court.
A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of making a false official statement, sodomy, and committing an indecent act, in violation of Articles 107, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 925, and 934, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for 30 days, total forfeitures, and reduction to the lowest enlisted grade. The Court of Crimi *420 nal Appeals affirmed the findings and sentence without opinion.
This Court granted review of the following issue:
WHETHER THE ARMY COURT OP CRIMINAL APPEALS ERRED IN AFFIRMING APPELLANT’S CONVICTION OF INDECENT ACTS (1) WHEN APPELLANT, WITH CONSENT, MOMENTARILY TOUCHED THE BREASTS OF A FEMALE WHO MERELY LIFTED HER SHIRT WITHOUT REMOVING IT AND (2) WHEN THE CONSENSUAL ACT OCCURRED IN THE PRIVACY OP APPELLANT’S OWN ROOM WITH NO THIRD PARTY PRESENT AND WITH THE DOOR CLOSED.
For the reasons set out below, we hold that appellant’s guilty plea to committing an indecent act was improvident.

Facts

The offenses arose when appellant hosted a party in his quarters in Riyadh, Saudi Arabia. The offenses of which he was found guilty were consensual sodomy (fellatio) with a young female soldier, Private First Class (PFC) AB, who attended the party; indecent acts by touching PFC AB’s bared breasts; and falsely denying that he had taken a female into his bedroom during the party.
The parties stipulated to the facts underlying the pleas of guilty. The stipulated facts offered to support the plea of guilty to committing an indecent act are as follows:
At approximately 2400 the accused approached PFC [AB] and asked her back to his bedroom. Both went to the bedroom accompanied by three other soldiers. Once back in his bedroom, the accused, PFC [AB], and the other three party attendees engaged in conversational pleasantries. Within minutes, PFC [AB] was left alone with the accused in his bedroom after the other three party attendees departed the bedroom.
As soon as PFC [AB] was left alone with the accused, he asked her if she would show him one her breasts [sic]. PFC [AB] denied this request. The accused then asked if he could show them without the top [sic]. She lifted her shirt, and the accused stared at the breasts and began to lustfully fondle them with both hands____
The accused admits that his actions with PFC [AB] were, under the circumstances, indecent. The accused realizes that his conduct was to the prejudice of good order and discipline and service discrediting because it was irresponsible for a newly promoted Staff Sergeant to conduct himself in such a manner with a junior enlisted soldier who had been drinking alcohol supplied by the accused. The accused was also aware that she was probably violating a local order barring deployed soldiers from being alone in the sleeping quarters of soldiers of the opposite sex. Moreover, he knew, or at least believed, that there was a substantial risk that his activity could be discovered at any given time if someone had walked in on them.
During the plea inquiry, appellant told the military judge that there were about 40 people at his promotion party. There was music and dancing in one room and food in another room next to appellant’s bedroom. Appellant did not share his bedroom with anyone else.
Appellant kept a supply of hard liquor in his bedroom because “there were a lot of people at the party and [he] didn’t want to run out of liquor.” He had also told the women present at the party that they could leave their purses and personal items in his bedroom.
Appellant invited three male soldiers and AB into his bedroom for “a private party” separate from the main party. They stayed for five to ten minutes and each had two or three shots of hard liquor. A video showing female nudity was playing on a television in appellant’s bedroom, but he did not know who put it in the video player.
The three male soldiers departed, leaving appellant alone with AB. Appellant and AB watched the video, talked, and had another drink. The door was closed but not locked. During the time that appellant and AB were alone in the bedroom, no one knocked on the door or came into the room. At this point in the plea inquiry, the military judge explained *421 the requirement for “open and notorious” conduct as follows:
Consensual sexual conduct ordinarily—and in your case would ordinarily be—not a criminal offense if done in private. However, it can constitute an indecent act if done in public. And “public” includes that there is a substantial risk that your conduct—your activities could be viewed by another or it’s reasonably likely that your conduct could be viewed by another.[1]
When the military judge asked, “Were people coming and going throughout the evening?,” appellant responded, “Only the people I let into my room.” However, he also told the military judge that “[i]t wouldn’t be any problem” for one of the women to retrieve her purse without asking permission. Appellant admitted that there was nothing to prevent someone from coming into the room and observing his conduct.
Appellant told the military judge that he asked AB if he could touch her breasts. AB lifted up her shirt, and appellant touched her breasts.

Discussion

RCM 910(e), Manual for Courts-Martial, United States (2000 ed.),[2] provides: “The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea.” In order to establish an adequate factual predicate for a guilty plea, the military judge must elicit “factual circumstances as revealed by the accused himself [that] objectively support that plea[.]” United States v. Davenport, 9 MJ 364, 367 (CMA 1980). It is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty. United States v. Outhier, 45 MJ 326, 331 (1996).
Appellant contends that his guilty plea was improvident because his act was not performed in an “open and notorious manner.” The Government contends that appellant’s act was committed “openly and notoriously” because it was reasonably likely that others would see it, even though no one actually saw it.
“ ‘Indecent’ signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations.” Para. 90c, Part IV, Manual, supra. An otherwise lawful sexual act may violate Article 134, supra, if it is committed “openly and notoriously.” United States v. Berry, 6 USCMA 609, 614, 20 CMR 325, 330 (1956). An act is “open and notorious ... when the participants know that a third person is present.” Id.
In United States v. Izquierdo, 51 MJ 421, 423 (1999), decided after appellant’s court-martial, this Court held that the evidence was legally sufficient to support a conviction of committing an indecent act, where the accused had sexual intercourse with a woman in his barracks room while his two roommates were in the room, even though he blocked their view by hanging up a sheet “that substantially blocked his roommates’ view of his side of the room.” In the same ease, however, we held that the evidence was legally insufficient to prove an indecent act where the accused had sexual intercourse in a shared barracks room, with the door closed but unlocked and no one else present in the room.
Izquierdo was a contested case, but it is instructive and closely analogous to this case. In Izquierdo, this Court tacitly approved the military judge’s instruction that sexual acts are open and notorious when committed “in such a place and under such circumstances that it is reasonably likely to be seen by others even though others actually do not view the acts.” Id.; see United States v. Carr, 28 MJ 661, 664 (NMCMR 1989). *422 Izquierdo clarified the Berry definition (“when the participants know that a third person is present”) by holding that it was not necessary to prove that a third person actually observed the act, but only that it was reasonably likely that a third person would observe it. However, we concluded that, even when viewed in the light most favorable to the prosecution, the evidence was legally insufficient to prove that the sexual act, committed in a shared barracks room with no third party present and with the door closed but unlocked, was open and notorious.
In this case, the sexual touching was committed in a private bedroom, with the door closed but unlocked. This is a close ease, because as in Izquierdo, there was a possibility that someone, in this case from the ongoing party, would enter through the closed but unlocked door and observe the sexual activity. However, this case is weaker than Izquierdo in two respects: (1) appellant was in his private bedroom, which gave him a greater expectation of privacy than a shared barracks room; and (2) neither party had disrobed. The act in question could have been terminated easily and quickly. Had anyone knocked, called out, or in any way signaled their entry into the room, AB could have quickly pulled her shirt down and covered herself.
We have noted appellant’s stipulation that “there was a substantial risk that his activity could be discovered!)]” In our view, appellant’s conclusory stipulation, without any additional facts to distinguish this case from Izquierdo, is inadequate to establish a factual predicate for “open and notorious” sexual conduct. See Outhier, supra. Accordingly, there is a substantial basis for rejecting the plea as improvident, because appellant’s responses and the stipulation of fact state only the conclusion that it was reasonably likely under these circumstances that appellant’s act of touching PFC AB would have been seen by others, but they do not provide the factual basis for that conclusion.[3] United States v. Prater, 32 MJ 433, 436 (CMA 1991).
We turn finally to the question of prejudice. Considering the nature of the remaining findings of guilty and the sentence adjudged at trial, we are satisfied that appellant was not prejudiced as to sentence, and “we perceive no reasonable possibility of benefit to [appellant] by remand of the record ... for reassessment of the sentence.” See United States v. Rushing, 11 MJ 95, 98 (CMA 1981).

Decision

The decision of the United States Army Court of Criminal Appeals is reversed as to the finding of guilty of Specification 2 of Charge V. The finding of guilty of Specification 2 of Charge V is set aside, and that specification is dismissed. In all other respects, the decision is affirmed.

. The military judge’s explanation clearly shows that this case is not about victims’ rights, as the dissent suggests. Appellant pleaded guilty to a consensual act. The alleged unlawfulness of the act was based on its public nature, not the co-actor’s lack of consent.

. All Manual provisions cited are identical to those in effect at the time of appellant's court-martial.

. Our decision does not establish a per se rule, as asserted by the dissent. We have applied well-established law providing that otherwise lawful sexual conduct is indecent if committed in pub-lie, and we have held, on a case-specific basis, that the factual predicate elicited from appellant in this case was inadequate to establish that his conduct was "public.”